Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 7539 | DATE | 3/27/2002 |
| CASE TITLE | Douglas Press, Inc. v. World Wide Press, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Patent Claim Construction

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, this Court GRANTS the defendant's motion for patent claim construction [36-1] and construes the claims in Patents No. 5046737 and No. 5,407,200.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 3/28/02 | |
| | Notified counsel by telephone. | | date docketed | 52 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOUGLAS PRESS, INC. )
)
      Plaintiff, )
)
      v. ) No. 99 C 7539
)
WORLD WIDE PRESS, INC., ) HONORABLE DAVID H. COAR
)
)
      Defendant. )

## MEMORANDUM AND OPINION ORDER

Plaintiff Douglas Press Inc. ("Plaintiff") charges several of Defendant World Wide Press, Inc.'s ("Defendant") products with infringing either U.S. Patent No. 5,046,737 entitled "Lottery-Type Game System With Bonus Aware" ("'737 patent") or U.S. Patent 5,407,200 entitled "Lottery-Type Gaming System Having Multiple Playing Levels" ("'200 patent"). Defendant has moved this Court to construe the patent claims in this case. On July 26, 2001, this Court held a Markman hearing at which the parties presented their respective interpretations of Claim 1 of the '737 Patent and Claims 1 and 2 of the '200 Patent. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), aff'd 517 U.S. 370 (1996). The following represents this Court's constructions of the claims at issue in the patents in this case.

### I. Claim Construction Standards

In Markman, the Federal Circuit held, and the Supreme Court affirmed, that it is the courts' responsibility as a matter of law to construe the claims of patents for the jury. 52 F.3d at 979. Claim construction is "the process of giving proper meaning to the claim language," the fundamental process that "defines the scope of the protected invention." Abtox, Inc. v. Exitron

Corp., 122 F.3d 1019, 1023 (Fed. Cir. 1997). To ascertain the meaning of the claims, this Court considers intrinsic evidence, which derives from three sources: "[t]he claims, the specification, and the prosecution history." Markman, 52 F.3d at 979. While claim language defines the scope of the patented invention, the specifications and the prosecution history "provide a context to illuminate the meaning of claim terms." Abtox, 122 F.3d at 1023. Even where other intrinsic and extrinsic evidence is available, the claim language is the primary source of meaning throughout the interpretation process. Id. In utilizing this primary source, "claim terms are given their ordinary meaning unless examination of the specification, prosecution history, and other claims indicates that the inventor intended otherwise." Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1277 (Fed. Cir. 1995); see also Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1995).

If there is some ambiguity that can not be resolved upon consideration of the intrinsic evidence, "extrinsic evidence may also be considered, if needed to assist in determining the meaning or scope of technical terms in the claims." Kopykake Enters., Inc. v. Lucks Co., 264 F.3d 1377, 1381 (Fed. Cir. 2001) (citations omitted). Extrinsic evidence is all other evidence beyond the patent, its specification, and its prosecution history.

## II. Discussion

Both the '737 and '200 patents generally describe a lottery-game system involving playing tickets together with a master game card. These games usually are played in bingo parlors. Roughly, the '737 patent describes and claims an invention that embodies a novelty, lottery-game system having tickets to provide a first level of play, together with two or more additional "levels" of play, which are operationally and functionally integrated into a master game card system. The '200 patent describes and claims an invention that embodies a novelty,

lottery-game system having a first "ticket" level of play, together with a master game card having additional areas of play, in an "elimination-style" game.

The parties disagree with only a few claim terms of each patent. This Court addresses each patent in turn.

*A. '737 Patent*

Claim 1 of the '737 patent is at issue. It claims:

1. A lottery-type game system providing multiple levels of play, comprising:

a plurality of playing cards each of which can be purchased by game players for a predetermined price per playing card,

each of said playing cards having a plurality of groups of game symbols displayed thereon, with each of said cards including selectively removable means for concealing the groups of game symbols thereon prior to purchase by a player, said means for concealing said game symbols being removed by the player after purchase for providing a first level of play, and

a master game card for use in conjunction with said playing cards,

at least one of said master game card and said plurality of playing cards having displayed thereon means for establishing the eligibility of a plurality of selected game players having playing cards displaying predetermined selected ones of said game symbols,

said master game card including means for identifying at least one of said eligible players, and selectively removable means for concealing said identifying means prior to establishing all of said eligible game players for providing a second level of play,

said master game card further including award identifying means comprising a plurality of award values displayed on said master game card, and selectively removable means for concealing said award values, so that said selected one of said eligible players can determine the

award to be received by removing the concealing means associated with one of said award values for providing a third level of play.

The parties have identified three areas of disagreement concerning the meaning of this claim: (1) the construction of the term "a master game card"; (2) whether the player(s) selected as the winner(s) of the second level of play win a prize, or have an opportunity to win a prize, before advancing to the third level of play; (3) whether the identifying means that determine a winner at the second level of play must be concealed and predetermined prior to playing the game.

1. "A master game card"

The first issue of claim construction concerns the definition of "a master game card." Defendant argues that the term, "a master game card," should not be limited to meaning a single or unitary card because the claim is silent regarding the structure of the master game card. Rather, Defendant's position is that the master game card can be a two-part master game card, and for support, Defendant points to language in the patent specification, which states that "the playing cards can be <u>otherwise configured</u>, as can the master game card." Col. 4, ll. 58-68 (emphasis added). Defendant further cites cases in which courts have held that, when used in a patent claim, indefinite articles such as "a" or "an," mean "one or more" in claims containing open-ended transitional phrases such as "comprising." See e.g. <u>Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.</u>, 246 F.3d 1336, 1347 (Fed. Cir. 2001).

Plaintiff counters that Defendant's proposed construction defies the specific disclosure in the claims, the specification, and the prosecution history. As to the "otherwise configured" language, Plaintiff argues that, read in context, that language refers specifically to the internal configuration of the features on the single, integrated master game card and not that the master

game card was to be reconstructed as multiple cards.

This Court agrees with Plaintiff and construes "a master game card" to mean one unitary card. While indefinite articles such as "a" or "an" can mean "one or more" in some cases, this Court finds that, in this case, the patentee did not intend a "special" definition for "a master game card," see Bell Comm. Research, Inc. v. Vitalink Comm. Corp., 55 F.3d 615, 620 (Fed. Cir. 1995), and the prosecution history does not suggest "a master game card" means anything other than a single card.[1]

2. Winning a prize, or having the opportunity to win a prize, at the second level

The second claim construction issue is whether the '737 patent requires the player(s) selected as the winner(s) of the second level of play win a prize, or have an opportunity to win a prize, before advancing to the third level of play. Defendant argues that there is no language in the claim that requires a prize be paid at the second level. Rather, the specification states "the 10 player[s] identified may automatically win a predetermined award." Col. 4, ll. 21-23. Defendant argues that use of the term "may" dictates that the award is optional and not required.

Plaintiff, on the other hand, counters that it is established throughout this patent's specification that it is the opportunity to win a prize at every level that defines the very heart of this game. For example, as stated in the outset of the patent: "As will be appreciated, affording players an opportunity to win awards in different ways enhances the entertainment value of the game." Col. 1, ll. 34-35. In fact, Plaintiff argues that the language, "may win" an award, precisely means the opportunity to win an award, and not that an award is optional. This Court

---

[1] This Court notes that two other judges have independently construed claim 1 of the '737 patent in unpublished opinions. Both Magistrate Judge Schenkier, in Douglas Press, Inc. v. Arrow Int'l, Inc., No. 95 C 3863 (N.D. Ill. Feb. 4, 1999), and District Judge Coughenour, in Bonanza Press, Inc. v. Douglas Press, Inc., No. C00-0133C (W.D. Wash. Aug. 17, 2000), also interpreted "a master game card" to mean one single master game card.

agrees with Plaintiff. To not require an opportunity to win an award at the second level before advancing to the third level essentially would create artificial "levels" of play that would not conform to the specification of the patent.

3. Predetermined identifying means

The final claim construction issue is whether the "means for identifying" a player(s) who advances to the third level be concealed and predetermined prior to the play of the game. The pertinent claim language states: ". . . said master game card including means for identifying at least one of said eligible players, and selectively removable means <u>for concealing said identifying means prior to establishing all of said eligible game players</u> for providing a second level a play, . . ." Col. 5, ll 32-36. Defendant argues that this claim should permit having a concealed predetermined winning symbol (i.e., such as a Rainbow) that does not also appear on the winning ticket that allows play at the next level. [In other words, the winning Rainbow symbol at the second level would not correspond to the winning symbols from the first level.] Defendant bases this argument on the fact that one of the identifying means employed is the "last sale" winner, and unlike other tickets that have predetermined winning symbols, the "last sale" ticket is not predetermined at the time the master game card is printed.

Plaintiff counters, however, that while the last ticket sold is not necessarily identified or predetermined on the face of that ticket, the "winner(s)" of the second level of play still must be identified (by an identifying means) before all of the eligible players are established. Plaintiff argues that a particular winner or player need not be identified prior to the game, but the winning player's <u>identifier</u> must be predetermined, whether that identifier is a predetermined number "013" or the "last sale" designation. Thus, even though the last ticket sold is undetermined, whether that "last sale" ticket holder wins at the second level and advances to the third level must

be predetermined on the master card prior to playing the game.

This Court agrees with Plaintiff. Since the patent specification language requires that the master card specifically identify and then conceal a player's "identifying means" prior to playing the game, it is clear that the identifier of the winner of the second level must be chosen, positioned, and concealed.

*B. '200 Patent*

The claimed invention of the '200 patent describes and claims a game where the winning player(s) at the end of the game is selected from that universe of players that either start or enter the game at a previous (lower) level.[2] Claims 1 and 2 of the '200 patent are at issue. Claim 1, upon which each other claim in the '200 patent depends, claims:

1. A gaming system apparatus providing multiple levels of play, comprising:

a plurality of playing cards, each of the playing cards including at least one game symbol displayed thereon;

at least one of said playing cards displaying a winning game symbol;

a master game card for use in conjunction with the plurality of playing cards, the master game card including a plurality of playing areas representing a plurality of playing levels;

the plurality of playing areas including a first playing area representing a first playing area and at least one successive area representing an additional playing level;

each successive playing area having at least one previous playing area representing a previous level of play;

---

[2] Plaintiff describes this game as a "new approach to an age-old concept; the concept of musical chairs—where eligible players continue to be eliminated, round by round, until one or more predetermined players remain to claim the top prize." Thus, in this game, "playing level" has an altogether different meaning than the term "level of play" described in the '737 patent.

each of the playing areas including indicia having at least one award identifying means for identifying both an award and at least one said winning game symbol associated with said identified award;

the first playing area including indicia having at least two award identifying means collectively having at least two different winning game symbols;

each of the successive playing areas including indicia having at least one award identifying means which includes a winning game symbol of a same type present in each of the previous playing areas; and

at least one of the award identifying means of the first playing area including a winning game symbol absent from the award identifying means of at least one successive playing area.

2. The invention according to claim 1 wherein the award identifying means further includes means for initially concealing the at least one corresponding winning game symbol.

As to Claim 1 of the '200 patent, the parties dispute two issues: (a) whether the indicia in each playing area must identify "both an award and at least one winning game symbol" and (b) whether any "playing area" must have a "means for concealing" the "winning game symbol." Additionally, the parties dispute one issue in claim 2: whether the "means for concealing" may conceal no more than one corresponding winning game symbol.

"Both an award and at least one winning game symbol"

The first construction issue in claim 1 of the '200 patent involves interpretation of the claim language: "each of the playing areas including indicia having at least one award identifying means for identifying both an award and at least one said winning game symbol associated with said identified award." Defendant argues that this language requires that every one of the playing areas must include indicia of an award and a winning game symbol. Plaintiff,

on the other hand, argues that an award and at least one winning game symbol <u>be associated</u> with a particular playing area, so that the players may determine the award to be won by a particular player in a specific playing area. Thus, Defendant's interpretation makes sense only if one reads the claim language without giving importance to the "associated with" language. After careful review of the specification of the '200 patent, including the language in the categories entitled "Summary of the Invention" and "Detailed Description of the Drawings," this Court agrees with Plaintiff. This Court construes this claim to require that only an award and at least one winning game symbol be associated with a particular playing area, and not that each playing area physically display both an award and at least one winning game symbol.

<u>Means for concealing the "winning game symbol" in any playing area</u>

The second construction issue for claim 1 of the '200 patent is whether the playing areas require means to conceal a winning game symbol. Defendant argues that a winning game symbol need not be concealed on the master game card prior to play, and that therefore the game is identical or very similar to single level games that are part of prior art so that the patentee may have failed to "claim the subject matter which [he] regards as his invention." Plaintiff does not dispute Defendant's construction of this language and agrees that the playing areas of claim 1 do not require means to conceal a winning game symbol. Plaintiff does not agree that this construction changes the game to a simple single level game because there are other elements to the game. This Court notes, however, that at this stage, it is merely construing the claims of the patent and not analyzing the effect of the construction. Therefore, this Court construes this claim to mean what both parties say it means: the playing areas do not require means to conceal a winning game symbol.

May the "means for concealing" conceal no more than one corresponding winning symbol?

The final claim construction issue the parties raise is whether the concealing means may conceal only one of the corresponding winning game symbols. Like the previous issue, both parties agree that the claim requires that the "means for concealing" may conceal only one of the corresponding winning game symbols. Defendant, however, seeks to make it an "issue" because it argues that, as a result of this construction, then the patentee may have failed to "claim the subject matter which [he] regards as his invention" because the game is identical or very similar to simple single level games where winners are known immediately upon opening game cards or simple two level games where there is a single flap winner. As stated in the previous section, this Court merely construes the claims. Therefore, as to claim 2, this Court construes the claim to mean what both parties say it means: the claim requires that the "means for concealing" may conceal only one of the corresponding winning game symbols.

### III. Conclusion

For the foregoing reasons, this Court GRANTS Defendant's motion for claim construction and construes the claims in accord with the analysis herein.

**Enter:**

_____
**David H. Coar**
**United States District Judge**

**Dated: March 27, 2002**